MATHIS v. SOUTHERN RY.            •

1. COMMON CARRIER—RAILROADS—MELONS.—The liability of a railroad company for failure to ship melons in iced cars does not depend on whether the refrigerator company who was to furnish cars was a common carrier.

2. IBID.—MELONS.—A common carrier cannot relieve itself from liability for failure to ship melons by saying that a refrigerator company whose cars it was to use for that purpose, had failed to furnish them and the necessary ice.

3. IBID.—IBID.—RAILROADS—DAMAGES.—For shipper to recover of common carrier for failure to carry melons in iced cars such damages as were the direct and proximate result of the refusal, he has only to show that defendant is a common carrier, and that it refused to carry the fruit, which refusal was the cause of the damage; and the liability attaches whether the freight offered was more than enough to fill the cars agreed to be furnished or not; nor is it incumbent on him to show the carrier agreed to furnish cars properly iced; but if defendant had reasons for refusing to carry, that is matter of defense.

4. IBID.—IBID.—DEFENSE.—A carrier cannot relieve itself of liability for failure to ship melons by showing that it held itself out to the public as being willing to haul iced cars to be furnished by another company on contract with shipper.

Before KLUGH, J., Barnwell, March, 1902.    Affirmed.

Action by ¡Charles H. Mathis against Southern Railway Co. From judgment for plaintiff, defendant appeals.

*Messrs. B. L. Abney, Joseph W. Barnwell* and *Robert Aldrich,* for appellant, cite: *For not supplying cars, carrier is responsible for unreasonable delay only:* 79 Mo., 296; 5 Ency., 2 ed., 168, N.; 87 Tex., 211. *Carrier may refuse to carry goods which he has no means of carrying safely:* Story on Bail., 4 ed., sec. 508; Hutch. on Cor., 2 ed., sec. 117; 14 Rich., 181; 70 Cal., 169; 25 Mich., 329; 1 C. B. N. S., 454; 49 L. R. A., 462; Elliot on R. R., sec. 1474; 79 Ia., 321; 3 Col., 280. *Duty of forwarder:* Story on Bail., 4 ed., sec. 502; 64 N. Y., 300; 13 Ency., 1165; 8 Rich., 240; 10 Ency., 89; 28 Tex., 819.

*Messrs. Bates & Simms,* contra, cite: *Defendant as common carrier, contracted with refrigerator company, and is liable:* 102 U. S., 451; 49 L. R. A., 462; 12 L. R. A., 746; 43 L. R. A., 225; 77 N. C., 347; 86 N. C., 346; 48 L. R. A., 175.

February 27, 1903.    The opinion of the Court was delivered by

MR. JUSTICE GARY.    *Statement of Facts.*—This is an action for damages, arising out of the defendant's alleged failure to provide suitable refrigerator cars for transporting the plaintiff's melons to northern markets.    The questions presented by the exceptions are so largely dependent upon the exact issues raised by the pleadings, that we have deemed it advisable to set forth one of the causes of action alleged in the complaint, which is as follows:

"(1)  That at the times hereinafter set forth, the defendant above named was and is now a railroad corporation, duly created and existing under and by virtue of the laws of the State of Virginia, under the name and style of Southern Railway Company; and as such was at said times and is now engaged as a common carrier for hire, of watermélons, canteloupes, and other fruits and vegetables, from the town of Blackville, in the said county and State, and from other towns and cities in said State and county, and elsewhere, to the northern markets, including the city of Washington, in the District of Columbia, Philadelphia, in the State of Pennsylvania, and New York, in the State of New York.

"(2)  That as such common carrier, defendant, for the purpose of such transportation, provided and had divers railroad freight cars of special construction, commonly known as refrigerator cars, which are provided with tanks or receptacles for ice, which is necessary to preserve such shipment from decay and deterioration during the transportation thereof to said markets; and the defendant, for the purposes above set forth, held itself out to the public who might be engaged in the production and handling of such

fruits and vegetables, and continues so to do, furnishing to said public when desired such cars at certain stipulated rates and charges, properly iced and refrigerated, and in proper condition to receive and transport safely and in good condition all such fruits and vegetables offered or delivered for transportation as aforesaid, to and from said points and elsewhere, as required by said public so engaged.

"(3) That within a reasonable time before the 10th day of July, A. D. 1900, the plaintiff, who was engaged in the cultivation and shipping of canteloupes and watermelons at and near the town of Blackville, in the said county of Barnwell, and also in otherwise handling the same for market, in pursuance of said business and for the purpose and intention of shipping canteloupes to the said city of Washington, D. C., duly notified the defendant of his purpose to have a carload of canteloupes crated and prepared for shipment on the said date at its depot in the said town of Blackville, which was a point from which the defendant usually handled such shipments, ordered a car of the defendant of the class above described, and to be properly refrigerated, which the defendant agreed to furnish as ordered.

"(4) That the plaintiff duly hauled to the said depot a carload of 502 crates of canteloupes upon the said date, in pursuance of said contract, and the defendant had the refrigerator car at said point, on the said date as agreed, but to the plaintiff's great disappointment, regret and loss, the same was not iced or otherwise refrigerated, as was its duty to have done, and hence totally unfit for shipment of said canteloupes or any other fruits, and the defendant's agents and servants refused to receive the same for shipment, and the plaintiff was forced by reason thereof, and because of the perishable character of the said freight and the necessity of quick transportation, to ship the said canteloupes to the said city of Washington by express, a method of shipment much more expensive and unsatisfactory than that agreed on with the defendant.

"(5) That by the said contract the plaintiff was to pay 18—65

the defendant the sum of $147.35 for the said transportation, including refrigeration, which was the rate for such cargo from Blackville to Washington; and the plaintiff on the said day was ready and willing to pay the same, had the defendant not refused to receive the said shipment as above stated, and failed and neglected to ice and refrigerate the car as aforesaid.

"(6) That the express charges on the said shipment which were paid by the plaintiff were $234, and plaintiff has been damaged by the defendant by reason of the matters and things above set forth and by said violation of its duty as said common carrier in the sum of $146.65, which is the difference between the cost of shipment by freight in refrigerator cars on the said date and the express rates which plaintiff was compelled to pay as aforesaid." The second cause of action is identical with the first except as to dates and amounts.

The answer of the defendant was a general denial. The jury rendered a verdict in favor of the plaintiff for $511.34.

The defendant appealed upon the following exceptions:

"I. Because it is respectfully submitted that his Honor erred in charging the jury as follows: 'In determining the issues in this case, if you should find that both the railroad company and the company known as the 'Swift Company were involved in this matter of transportation, and you should have any question in your mind as to which company is liable, or whether they are both liable, or whether the Swift Company is liable and the railroad company is not liable, the difficulty will be solved by determining for yourselves the question as to who was the common carrier;' thus making the liability of the defendant company depend upon the question as to whether the refrigerator company, which defendant contended furnished the cars, was a common carrier or not; whereas, it is submitted that the liability of the defendant company was not to be determined by the question as to whether the refrigerator company was a common carrier or not, but by the question, 'Did the railroad company,

defendant, hold itself out as a common carrier of vegetables by refrigerator cars or not?' whether such cars were furnished by a common carrier or private carrier.

"2. Because it is respectfully submitted that his Honor erred in charging as follows: 'Now, the Swift Company, if it also held itself out to the public generally for the business of common carrying, would, of course, also be a common carrier; but if the plaintiff has established that the railroad company was the common carrier in this instance, and the proof fails to show that the Swift Company was a common carrier, then, as a matter of course, the Swift Company cannot be held liable for any failure to perform the duty of a common carrier whatever; it might be held liable for failing to perform any other contract which it might be capable of entering into, and might enter into;' thus making the liability of the defendant company dependent upon the question whether the refrigerator company, commonly called the Swift Company, was a common carrier or not, and upon the question whether the Swift Company was liable for any failure to perform its duty or not; whereas, it is submitted that the liability of the defendant company did not depend upon whether the company which furnished the cars was a common carrier or not, or whether it could be held liable or not, but upon the question whether the defendant had failed to do any duty in not furnishing refrigerator cars.

"3. Because it is respectfully submitted that his Honor erred in charging as follows, as requested by the plaintiff in his third request: 'That if the jury find that the defendant railroad company owned no cars of suitable build and construction for safely carrying and preserving perishable fruits and products, that canteloupes are a perishable fruit or product, requiring quick transportation, in refrigerated or iced cars, and that the defendant company used or employed the cars of another company, whose duty was to furnish refrigerator cars, and to ice them, and to keep them iced, and such cars became a part of the trains of the defendant company, then the refrigerator car company and its employees

were in law the servants and employees of the defendant company, and their negligence in furnishing cars, or in furnishing suitable cars, or in furnishing the ice to refrigerate them, was the negligence of the defendant company.'

"4. Because it is respectfully submitted that his Honor erred in charging as follows, as requested by the plaintiff in his fourth request: 'The law will not permit a railroad company engaged in the business of carrying freight for hire through any device or arrangement with a refrigerator car company whose cars are used by the railroad company, and constitute a part of its train, to evade the duty of seeing to it that the cars thus employed are properly constructed and properly iced, if the preservation and safety of the freight which the railroad company has undertaken to carry, or holds itself out to the public to carry, depends upon such proper construction and icing.'

"5. Because it is respectfully submitted that his Honor erred in charging as follows, as requested by the plaintiff in his fifth request: 'The defendant cannot excuse itself from liability to the plaintiff for failure to furnish cars by saying that the cars belong to some other company which had undertaken to supply suitable cars, and to see to it that the same were properly refrigerated. It knew, or ought to have known, that the goods it was inviting the public to ship over its line, if you believe it so invited the public, were perishable, and the law imposed upon it the duty to use due diligence in providing suitable cars to carry the goods which its invitation would naturally bring.'

"6. Because it is respectfully submitted that his Honor erred in refusing to charge the following, as requested by the defendant in its first request: 'That the plaintiff, Charles H. Mathis, cannot recover anything from the defendant, the Southern Railway Company, on either cause of action set out in the complaint, unless he proves by the preponderance of the evidence that the railroad company held itself out to the public who might be engaged in the production and handling of fruits and vegetables as a company

furnishing to the public, when desired, certain freight cars of special construction, commonly known as refrigerator cars, provided with tanks or receptacles for ice necessary to preserve such fruits and vegetables from decay and deterioration during transportation, in which case it would be liable only for unreasonable delay; or unless the plaintiff proves that the said company, defendants, made an agreement or contract with the plaintiff to furnish the car or cars of the class above described, properly refrigerated, on the days mentioned in said causes of action respectively, and unless they find from the preponderance of the evidence that having so held itself out, or having so agreed, the defendants failed to furnish the cars on the days mentioned in said causes of action respectively.'

"7. Because it is respectfully submitted that his Honor erred in refusing to charge the jury, as requested by the defendant in its second request, as follows: 'That if the jury find from the evidence that a company, known as the Swift Refrigerator Transportation Company, or California Fruit Transportation Company, alone furnished refrigerator cars suitable for the transportation of fruits and vegetables, and that the same were not furnished by the defendant company, and that the railroad company did not solicit the business, and that the contract or agreement referred to or alleged in the said cause of action was not entered into with the defendant company, or its agents, but between the plaintiff and the said California Fruit Transportation Company, commonly known as the Swift Refrigerator Company, alone, and that the said transportation company failed to furnish refrigerator cars or ice for the same, and not the defendant, then the plaintiff cannot recover anything from the railroad company, defendant.'

"8. Because it is respectfully submitted that his Honor erred in refusing to charge the jury, as requested by defendant in its third request, as follows: 'That if the jury find from the evidence that there was no agreement on the part of either the railroad company or the California Fruit Trans-

portation Company, commonly known as the Swift Company, to furnish the plaintiff with cars on the days mentioned in the said causes of action respectively, then the plaintiff cannot recover from the defendant in this suit.'

"9. Because it is respectfully submitted that his Honor erred in refusing to charge the jury, as requested by the defendant in its fourth request: 'That if the jury find from the evidence that there was such a contract on the part of the California Fruit Transportation Company, commonly called the Swift Company, but that the plaintiff had agreed prior to the day of shipment that he would look to some other company for the refrigerator cars to transport his vegetables or fruits, then the plaintiff cannot recover anything in this suit.'

"10. Because it is respectfully submitted that his Honor erred in refusing to charge the jury, as requested by the defendant in its first additional request: 'That if the jury find the defendant liable, yet if they find from the evidence that the amount of canteloupes permitted to be carried in the refrigerator cars alleged to have been engaged or contracted for, was limited to a less amount than the amount alleged or proved to have been shipped by express, then the plaintiff cannot recover any express charges on any excess in the amount shipped by express over and above the amount limited to be carried in the refrigerator cars so engaged or contracted for.'

"11. Because it is respectfully submitted that his Honor erred in refusing to charge the jury, as requested in the defendant's second additional request: 'That if the Southern Railway Company simply held itself out to the public as prepared and willing to haul the refrigerator cars of refrigerator transportation companies, when shippers perfected their arrangement with such refrigerator companies, that would not bind the railroad company to itself furnish refrigerator cars.''

The twelfth exception was withdrawn.

*Opinion.*—The first and second exceptions will be consid-

ered together.   We agree with the appellant, that the liability of the defendant was not to be determined by the question as to whether the refrigerator company was a common carrier or not.   But the defendant was not prejudiced by the charge, as it tended to relieve it of liability in case the jury found that the refrigerator company was a common carrier.

The third, fourth and fifth exceptions will be considered together.   These exceptions are open to the objection, that they fail to specify in what particulars the charge was erroneous.   But waiving this objection and considering the exceptions, we are satisfied that the charge was free from error.   In the case of *Pa. R. R. Co.* v. *Roy,* 102 U. S., 451, the plaintiff while occupying a berth in the Pullman car as a passenger, was injured by the falling of the berth.   On appeal from a judgment in his favor, the Court thus stated the law : "As between the parties now before us, it is not material that the sleeping car in question was owned by the Pullman Palace Car Co., or that such company provided at its own expense a conductor and porter for such car, to whom was committed the immediate control of the interior arrangements * * * For the purposes of this contract under which the railroad company undertook to carry Roy over its line, and in view of its obligations to use only cars that were adequate for safe conveyance, the sleeping car company, its conductor and porter, were in law the servants and employees of the railroad company.   Their negligence, or the negligence of either of them, in any matters involving the safety and security of passengers while being conveyed, was the negligence of the railroad company. The law will not permit a railroad company engaged in the business of carrying persons for hire, through any device or arrangement with a sleeping car company whose cars are used by the railroad company and constitute a part of its train, to evade the duty of providing proper means for the safe conveyance of those whom it has agreed to convey." The same principle was applied to carriers of freight in

*Cromwell* v. *N. Y. P. & N. R. R. Co.,* 49 L. R. A. (Va.), 462. The plaintiff in that case shipped strawberries over the N. Y. P. & N. R. R. in one of the Swift Company's cars, and the ice failed in transit. The railroad company contended that the Swift Company and not the railroad company was liable. The Court used this language: "Recognizing the higher duty by common carriers to passengers, we are of opinion that the principles announced by the Supreme Court in this case (Roy) are applicable to the case at bar * * * The California Fruit Transportation Co. for a consideration furnished its cars to the plaintiff in error. These cars were agencies or means employed by the plaintiff in error for carrying on its business and performing its duty to the public as a common carrier, one of which was to provide suitable cars for the safe and expeditious carriage and preservation of the freight it undertook to carry. A railway company cannot escape responsibility for its failure to provide cars reasonably fit for the conveyance of the particular class of goods it undertakes to carry by alleging that the cars used for the purposes of its own transit were the property of another. The undertaking of the plaintiff in error was to properly care for and safely carry the fruit of the defendant in error, and it is immaterial that the cars in which they were carried were owned by the California Fruit Transportation Company, or that such company undertook to ice said cars or to pay for the ice. As between the plaintiff in error and the defendant in error, the California Fruit Transportation Company and its employees were the agents of the plaintiff in error."

We proceed to the consideration of the sixth exception. Unless all the propositions of law embodied in a request are sound, it cannot be successfully contended that there was error in refusing it. The proposition that the plaintiff cannot recover from the defendant unless he proves that the railroad company held itself out to the public as furnishing refrigerator cars for transporting fruits and vegetables, is erroneous, inasmuch as it was only neces-

sary for the plaintiff to show that the defendant was a common carrier of freight, and that the defendant refused to transport articles of freight which resulted in damage to the plaintiff. If there were reasons excusing the defendant for refusing to ship the articles, it was incumbent on it to establish such facts. In *Porcher* v. *R. R. Co.,* 14 Rich., 181, the Court says: "A common carrier is bound to receive and carry all goods offered for transportation by any persons whomsoever, upon receiving a suitable hire. This is the result of his public employment as a carrier, and he will be liable to an action, unless there is a reasonable ground for the refusal. But if he refuses to take charge of the goods, because his coach is full, or because they are of a nature which will, at the time, expose them to extraordinary danger, or to popular rage, or because he has no convenient means of carrying such goods with security, etc., these will furnish reasonable grounds for his refusal; and will, if true, be a sufficient legal defense to a suit for the non-carriage of the goods"—citing Story on Bailments, sec. 508. The proposition that the defendant would only be liable for unreasonable delay is also erroneous. The defendant would be liable for all damages that were the direct and proximate result of its refusal to transport. The articles of freight tendered were of a perishable nature. It was reasonable to suppose that they would either decay or that the shipper would be compelled to resort to a more expensive mode of transportation to market.

Neither was the proposition a correct statement of the law, that the plaintiff cannot recover unless he proves that the defendant made an agreement to furnish cars properly refrigerated at the times mentioned. The defendant as a common carrier of freight was bound to transport, even in the absence of an agreement, unless it showed facts excusing it for failure to ship the articles of freight. *Porcher* v. *R. R.,* 14 Rich., 181.

The proposition is likewise unsound that the plaintiff cannot recover unless the jury find that the defendant failed to

furnish the cars after holding itself out or having agreed to do so. In *Piedmont Mfg. Co.* v. *R. R.,* 19 S. C., 353, the Court says: "It is admitted that common carriers in this State cannot limit their common law responsibility by any notice, or declaration, or special contract, for or in respect of any goods to be carried by them"—citing the statute. Sec. 1709 of the Rev. Stat. is as follows: "No public notice or declaration shall limit or in any wise affect the liability at common law of any public common carriers for or in respect of any goods to be carried and conveyed by them; but they shall be liable, as at common law, to answer for the loss for injury to any articles and goods delivered to them for transportation, any public notice or declaration by them made and given contrary thereto, or in any wise limiting such liability, notwithstanding."

We proceed to consider the seventh exception. While the facts set forth in this exception would make the refrigerator company liable, it does not follow that they would relieve the defendant of liability; for if, as alleged in the complaint, the plaintiff made application to the *defendant* to ship the canteloupes, it was bound to do so unless there were circumstances excusing its failure. The complaint alleges that the plaintiff not only notified the *defendant* of the intended shipment, but that it agreed to furnish the refrigerator cars. If this was the fact, the defendant could not relieve itself from liability under the facts mentioned in the exception.

We will next consider the eighth exception. It has already been shown that in the absence of an agreement either with the defendant or the refrigerator company, the defendant may still be liable by reason of the rule that a common carrier is bound to transport, unless there are circumstances justifying its failure.

The ninth exception will next be considered. We have already shown that if an agreement was made with the refrigerator company, it would not relieve the defendant from liability, in case the plaintiff, as alleged, not only notified it

of the intended shipment but that it agreed to furnish suitable cars.

We proceed to consider the tenth exception. The authorities hereinbefore mentioned make it plain that even if there was an agreement for a certain number of cars and the plaintiff tendered for shipment a larger number of crates than could be shipped in those cars, the defendant was, nevertheless, bound to transport all the crates tendered, unless excused from so doing under the circumstances of the case. If the circumstances were not such as to excuse the defendant's failure, the plaintiff had the right to recover damages directly and proximately caused by the defendant's failure, not only to ship the number of crates that could have been transported in the cars mentioned, but likewise the other crates tendered for shipment. The request was, therefore, erroneous.

The eleventh exception will next be considered. The request therein set out embodies an erroneous principal of law. Such a rule would enable a railroad company to shift its responsibility as a common carrier on others, which cannot be done. It must transport when the demand is made unless excused, and it cannot refuse on the ground that others had assumed any part of the duty resting on it as a common carrier. In addition to the foregoing authorities, we cite the cases of *Bank* v. *R. R. Co.*, 25 S. C., 222; *Harmon* v. *R. R. Co.*, 28 S. C., 401, 5 S. E. R., 835; *Parr* v. *R. R. Co.*, 43 S. C., 197, 22 S. E. R., 1009; *Youngblood* v. *R. R. Co.*, 60 S. C., 9, 38 S. E. R., 232.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.