## ADGER v. BLUE RIDGE RAILWAY.

RAILROADS—COMMON CARRIER—BAGGAGE.—The initial carrier is liable for the baggage of one who applies in good faith for a ticket and transportation of baggage over it and connecting lines, with notice to agent of no intention of becoming a passenger on its line, whose agent declines to sell the through ticket, but sells a ticket over it and a connecting carrier, and upon sale of the ticket receives and checks the baggage through to destination.

*Marshall* v. *R. R.,* 55 L. R. A., 650, *distinguished from this case.*

Before TOWNSEND, J., Anderson, July, 1904. Affirmed.

Action by Jane W. Adger against Blue Ridge Railway Company. From judgment for plaintiff, defendant appeals on the following exceptions:

"I. Error of the presiding Judge in refusing the defendant's second request to charge, which was as follows: 'The relation of passenger and carrier must exist before the plaintiff can hold the defendant to the strict liability of a carrier. If the plaintiff bought a ticket over the defendant's railroad, not intending to ride upon defendant's train and in fact did not ride, but bought said ticket for the purpose solely of providing transportation for her baggage over defendant's line, I charge you that the defendant is not liable as carrier of passengers, but if it received the baggage, is liable only as a gratuitous bailee for gross negligence which the plaintiff must prove. If she has failed to prove such gross negli-

gence, you should find for the defendant.' Specifications: Said request contained a correct principle of law applicable to the case. The establishment of the relation of passenger and carrier or shipper and carrier is essential to holding a railroad company to the strict liability of a common carrier. If, therefore, the plaintiff bought a ticket over the defendant's railroad not intending to ride thereupon, and in fact did not ride, but bought said ticket for the purpose solely of procuring transportation for her baggage over defendant's line, as matter of law, the relation of passenger (or shipper) and carrier was not *created*. Under such circumstances, the defendant who received the baggage would be liable only as a gratuitous bailee for gross negligence, which must be proved by the plaintiff.

"II. Error of the presiding Judge in charging the plaintiff's first request to charge, which was as follows: 'The jury are instructed that under the law in this State, railroads are common carriers.' Specification: Whether a railroad company sustains the relation of common carrier to a person, is a question of fact dependent upon the circumstances of each case. It is not a common carrier from the fact simply that it is a railroad company.

"III. Error of the presiding Judge in charging the plaintiff's second request to charge, which was as follows: 'The jury are further instructed that when once a carrier receives either baggage or goods for transportation, he becomes, as it were, an insurer, and can only excuse himself from liability by showing that the loss arose from the act of God or the 'public enemy.' Specification: A carrier who receives either baggage or goods for transportation is not held to the strict liability of a common carrier unless it appears that the relation of a common carrier *pro hac vice* has been established.

"IV. Error of the presiding Judge in charging the plaintiff's third request to charge, which was as follows: 'The jury are further instructed that, under the law in this State, if they find the defendant company received the trunk in

question as a common carrier and undertook to transport the same, then the question for the jury to solve is not a question of negligence, as in the case of an ordinary bailee, but the sole question is whether the defendant has shown that the damage sustained resulted from any one of the causes which would exempt the carrier from responsibility, to wit: the act of God or the public enemy, or other causes to be hereafter mentioned. The rule is, that in an action against a common carrier, the onus is upon the defendant to show the damage complained of was occasioned by causes which exempt it from responsibility, and that it is not enough for it to prove that it was not guilty of negligence, but it used the utmost care and diligence. If, therefore, the jury find from the evidence, of which they are the sole judges, that the plaintiff delivered a trunk to the defendant as a common carrier, to be transported, and if the defendant so received the same, then the onus is upon the defendant to prove that the loss of the trunk arose from the act of God or the public enemy, or a like cause beyond its control.' Specification: The rule announced only applies when the relation of passenger and carrier is established. The defendant, as it contended, may as a common carrier receive the trunk in the capacity of gratuitous bailee, with the limited liability of that relation. This request is particularly harmful in connection with the first request.

"V. Error of the presiding Judge in charging the plaintiff's fourth request to charge, which was as follows: 'The jury are further instructed that the liability of a common carrier attaches as soon as baggage or goods are received to be transported on any part of the road. If, therefore, the jury find from the evidence that the plaintiff delivered her trunk to the defendant as a common carrier and received a check therefor, the liability of the defendant as a common carrier commenced as soon as such delivery was made.' Specification: Under the circumstances stated, the liability of the defendant as a common carrier did not commence until the

plaintiff attained and sustained the relation of passenger or shipper of freight.

"VI. Error of the presiding Judge in charging the plaintiff's fifth request to charge, which was as follows: 'The jury are further instructed that the purchase of a ticket by a person entitled to travel between two stations creates the relation of carrier and passenger.' Specification: The purchase of a ticket by a person entitled to travel between two stations does not necessarily create the relation of passenger and carrier; certainly not when the passenger has no intention of taking passage upon the cars, as was the case in the present controversy. The relation of passenger and carrier begins when one puts himself in the care of the carrier, or directly under its control, with the *bona fide* intention of becoming a passenger, and is accepted as such by the carrier; such acceptance may be implied from circumstances showing that the person has offered himself to be carried. The intention of being carried is essential.

"VII. Error of the presiding Judge in charging the plaintiff's sixth request to charge the following: 'It (a baggage check) is a delivery and acceptance, the abandonment of all care of the baggage by the passenger and the assumption of it by the agents of the carrier.' Specification: It is no part of a contract of carriage that the passenger abandons all care of his baggage. Emergencies may arise when his care and attention may preserve it from loss, and this the carrier has the right to take into consideration when the contract is entered into.

"VIII. Error of the presiding Judge in charging the plaintiff's seventh request to charge, which was as follows: 'The jury are further instructed that, under the law of this State, in case of loss or damage to any article or articles delivered to any railroad company for transportation, the initial corporation first receiving the same shall, in every case, be liable, but may discharge itself from such liability by the production of a receipt in writing for the said articles from the

corporation from whom it was its duty to deliver the said article or articles in the regular course of transportation. If, therefore, the jury find from the evidence that the plaintiff delivered her trunk to the defendant for the purpose of transportation to the city of Charleston, and that the defendant was the initial corporation or the corporation first receiving the trunk, then the defendant is liable, unless it discharged itself from such liability by the production of a receipt in writing for the said trunk from the corporation to whom it was its duty to deliver it.' Specification: (a) The law quoted (section 2176 Code of Laws) applies to freight and not to baggage. (b) The complaint is based upon the loss of the trunk as baggage and not as freight.

"IX. Error of the presiding Judge in charging the plaintiff's tenth request to charge, which was as follows: 'The jury are further instructed that the law makes it the duty of common carriers to have an agent at every regular station to receive and take charge of baggage or freight. Such agent or baggage master so placed at the station by the railroad company, is held out to the public by it as having authority to make arrangements as to what sort of baggage shall be carried by the railroad company, and as to the shipment of baggage or freight; the railroad company having given him the direction and control and the management of the articles of freight, he is, in the eye of the law, so far as the outside public is concerned, authorized and clothed with the authority to make contracts for the transportation of freight or baggage, and to bind the company in that respect. If, therefore, the jury find from the evidence, of which they are the sole judges, that the plaintiff delivered her trunk to the baggage master of the defendant at the station of Walhalla, S. C., and that he received the same, agreeing to deliver it again to the plaintiff at Charleston, S. C., then the defendant is bound by such acts of its baggage master, and is bound to deliver the trunk, or to account for its loss by reason of the exemptions allowed to common carriers.' Specification: It

is not within the apparent scope of a station agent's authority
to check baggage through to a point not covered by the pas-
senger's ticket, nor to agree to transport baggage for the
price of a ticket when it is known that the passenger does not
intend to accompany the baggage or take passage at all.
The defendant was not, therefore, bound by such contract.
At most, it constituted the defendant a gratuitous bailee
liable only for gross negligence, and not a common carrier
with the strict liabilities of that relation.   If this be incor-
rect, then it is submitted that whether the conduct stated was
within the apparent scope of the agent's authority, was a
question of fact which should have been submitted to the
jury.

"X. Error of the presiding Judge in charging the plain-
tiff's eleventh request to charge, which was as follows: 'The
jury are further instructed that it is usually within the appa-
rent scope of the baggage master's employment, when asked
by a passenger whether the company takes baggage over a
given railroad, to answer the question and to bind the com-
pany by checking it over connecting roads.   If, therefore,
the jury find from the evidence that the baggage master at
Walhalla, the agent of the defendant, in answer to the
inquiry of the plaintiff, agreed to accept the baggage and
check it to be delivered at Charleston, such agreement was
within the apparent scope of his authority, and the defendant
company is bound thereby.'   Specification: It is not within
the apparent scope of station agent's authority to check bag-
gage through to a point not covered by the passenger's
ticket, nor agree to transport baggage for the price of a
ticket, when it is known that the passenger does not intend to
accompany the baggage or take passage at all.   The defend-
ant was not, therefore, bound by such contract.   At most, it
constituted the defendant a gratuitous bailee, liable only for
gross negligence and not a common carrier with the strict
liabilities of that relation.   If this be incorrect, then it is
submitted that whether the conduct stated was within the

apparent scope of the agent's authority, was a question of fact which should have been submitted to the jury.

"XI. Error of the presiding Judge in charging the plaintiff's twelfth request to charge, which was as follows: 'The jury are further instructed that in declaring for lost baggage, it is not indispensable that it should be alleged that the owner was a passenger on the road with the baggage. The obligation of the public carrier to carry safely and deliver the trunk at its destination, was the same whether the plaintiff was a passenger or not. It is, therefore, not material in order to fix the liability on the carrier to allege that the plaintiff was a passenger, and that the trunk was taken as part of her baggage. If, therefore, the jury find from the evidence, of which they are the sole judges, that the plaintiff did not get on the train with the baggage and was not a passenger on the train from Walhalla to Seneca, this does not relieve the common carrier when liable for the delivery of the trunk.' Specification: The establishment of the relation of passenger and carrier is essential to holding a railroad company to the strict liability of a common carrier. If, therefore, the plaintiff bought a ticket over the defendant's railroad not intending to ride thereupon, and, in fact, did not ride, but bought said ticket for the sole purpose of procuring transportation for her baggage over defendant's line, as matter of law, the relation of passenger and carrier was not created. Under such circumstances, the defendant who received the baggage would be liable only as a gratuitous bailee for gross negligence, which must be proved by the plaintiff.

"XII. The presiding Judge erred in charging the plaintiff's thirteenth request to charge, which was as follows: 'The jury are further instructed that, if the carrier accepts baggage for transportation, knowing that the owner was not and did not intend to become a passenger, it would accept it to be carried as freight, and would be liable for it as a common carrier of goods. If, therefore, the jury find from the evi-

dence, of which they are the sole judge, that at the time the baggage was delivered to the baggage master, the agent of the defendant at Walhalla, the agent knew that the passenger was not and did not intend to become a passenger on defendant's train from Walhalla to Seneca and beyond, that then the railroad company must be considered as having accepted said trunk to be carried as freight, and would be liable for it as a common carrier of goods.' Specification: (a) Under the circumstances stated, the carrier would be a gratuitous bailee and not a common carrier. (b) The agent knowing that the plaintiff did not intend to take passage, had no authority to receive the baggage other than as gratuitous bailee. (c) The plaintiff having based her action upon the defendant's failure to carry her trunk as baggage, relying upon the relation of passenger and carrier, cannot recover upon the ground that it was freight.

"XIII. The presiding Judge erred in charging the plaintiff's fourteenth request to charge, which was as follows: 'The jury are further instructed, that if the passenger did not accompany the baggage, and this was known in advance to the defendant or its agent, then the defendant had the right to claim compensation in advance or to postpone his claim until delivery, or to rely on his lien or on the personal responsibility of the owner. The actual payment of the freight in the one case, or the actual liability or lien for its payment in the other, constitute the consideration for the undertaking. If, therefore, the jury find from the evidence that the plaintiff delivered her trunk to the defendant, paying certain compensation in advance, and that the common carrier received it under the liability of a common carrier to transport and safely deliver it in the city of Charleston, accepting the compensation given as satisfactory, or if not, to rely on his lien upon the trunk or the personal responsibility of the owner for further and additional compensation.' Specification: (a) Under the circumstances stated, the carrier would be a gratuitous bailee and not a common carrier. (b) The agent

knowing that the plaintiff did not intend to take passage, had no authority to receive the baggage other than a gratuitous bailee. (c) The plaintiff having based her action upon the defendant's failure to carry her trunk as baggage, cannot recover upon the ground that it was freight."

*Mr. T. P. Cothran,* for appellant, cites: *Liability for baggage springs from relation of passenger:* Hutch. on Car., 2 ed., sec. 678; 3 A. & E. R. Ca. (N. S.), 374; 2 Ency., 2 ed., 744; 39 S. C., 170; 5 Ency., 2 ed., 488; 106 Ill. App., 287. *Carrier is only liable as gratuitous bailee to one who buys a ticket for sole purpose of checking baggage:* 55 L. R. A., 650; 56 At. R., 457; 57 Me., 138; Hutch. on Car., sec. 702; 3 Ency., 2 ed., 553; 98 Me., 98.

*Messrs. Smythe, Lee & Frost,* contra, cite: *Purchase of ticket creates relation of passenger and carrier:* 5 Ency., 490; Redfield on Carriers, 265, 352; 9 A. & E. R. R. Cas., 267; Wood on R. R., sec. 346; Hutch. on Carriers, sec. 718; 96 Am. Dec., 436. *A baggage check is a delivery and acceptance:* 84 Am. D., 654; 10 How., 330; 83 Am. Dec., 145; Wood on R. R., 1810-11; 7 S. C., 158. *Act of railroad agent in receiving the trunks is the act of the defendant:* 84 Am. D., 648; 16 A. & E. R. R. Cas., 116; 2 Am. D., 27; 5 Cush., 71; Wood on R. R., 1814; 17 F. R., 211; Hutch. on Car., secs. 688a, 719; 67 S. C., 395; 104 Ind., 292. *Owner of baggage need not travel on train carrying baggage:* Hutch. on Car., secs. 701, 704; 43 Am. D., 201; 92 Am. D., 392; 22 Ia., 166; 76 Am. D., 750; 2 Am. R., 29; 21 Gratt., 663.

*Messrs. Tribble & Prince,* also contra. *Mr. Prince* confines his printed argument to a discussion of the case of *Marshall* v. *R. R.,* 55 L. R. A., 650.

March 22, 1905. The opinion of the Court was delivered by

MR. JUSTICE GARY. The allegations of the complaint material to the questions presented by the exceptions are as follows: "That on the third day of September, A. D. 1903, the plaintiff delivered to the defendant, through its proper and lawful agents, in the town of Walhalla, State of South Carolina, one trunk in good shipping order, to be transported for valuable consideration, then and there paid, either over its own or over connecting railway lines, from the town of Walhalla to the city of Charleston, State aforesaid. That the defendant accepted the same to be so transported, and as a receipt therefor gave to the plaintiff a check of the said railway company designated by the number 6555. That the defendant, not regarding its duty, did not use proper care therein, but by the wilful misconduct and gross negligence of it and its servants, said trunk with its contents has been wholly lost."

The answer denies these allegations, and sets up as a defense, "that the plaintiff never became a passenger upon defendant's line, the relation of passenger and carrier never existed and the obligation of a carrier was not assumed by the defendant."

The jury rendered a verdict in favor of the plaintiff for $1,276.60. The defendant appealed upon exceptions which will be set out in the report of the case.

The uncontroverted facts are, that on the third of September, 1903, the plaintiff and her husband, Jno. B. Adger, came by private conveyance from the highlands of North Carolina to Walhalla, S. C., for the purpose of returning on the railroad trains to Charleston, S. C. When they arrived at the depot in Walhalla, they found the three trunks on the platform at the station. They requested the defendant's agent to sell them tickets to Charleston and check their baggage to that place, stating that they wanted to go by way of Spartanburg, so as to be able to take a sleeper to Charleston, and also stating to him that in order to take that route, it would be necessary for them to go by private conveyance

to Seneca, as they wanted to leave their horse and buggy with a friend. The agent told them that he could not sell them tickets to Charleston, but could sell them tickets to Spartanburg, and would check their baggage through to Charleston. The baggage was put on the train and was seen at Seneca and other points on defendant's road, but one of the trunks failed to reach its destination. They purchased the tickets to Spartanburg with the *bona fide* intention of getting aboard the train as passengers from Seneca to Spartanburg and for the purpose of enabling them to have their baggage checked to Charleston. It was their desire and intention that they and their baggage would arrive in Charleston at the same time.

In the early history of railroads, it was held that, as a carrier was only liable for the negligence causing injury to a passenger, it was only liable to that extent for loss of his baggage. The Courts have repudiated this doctrine, and a railroad is now held to the strict liability of a carrier of goods. In the early development of railroads, it was likewise regarded as necessary for the passenger to accompany his baggage for the purpose of identifying it and receiving it when it reached its destination. This is still necessary in England and other countries, where the system of checking does not prevail. But now, carriers in this country frequently refuse to take baggage on trains which carry passengers, and give notice of this fact in their time tables. The carrier has absolute control over the baggage after checking it, until it reaches its destination, and may select the particular train upon which it is to be carried. The fact that a person purchasing a ticket does not ride on the train does not in itself place the carrier at any disadvantage. The only reasons now existing, why a person purchasing a ticket without the intention of taking passage should not be regarded as a passenger, are that this relation imposes a liability upon the carrier that would not otherwise exist; and, furthermore, the conduct of the carrier's business might

possibly be interfered with, as baggage must necessarily be transported more rapidly than freight.

When a person purchases a ticket there is an implied agreement that he intends to become an actual and not a constructive passenger,· and he has no right to change the contract without the assent of the carrier. Good faith is involved in the purchase of the ticket. When, however, it would be inequitable for the carrier to insist upon this implied agreement, it is estopped.

After these general remarks, we proceed to construe the contract in this case and to determine the relation thereby created between the plaintiff and the defendant. When the trunks were tendered for transportation, the law imposed upon the defendant as a common carrier the duty of carrying them, either as baggage or as freight, upon satisfactory arrangements being made as to compensation. *Mathis* v. *Ry.*, 65 S. C., 281, 43 S. E., 684.

Instead of insisting upon the right to carry the trunks as freight, the defendant recognized and assented to the right of the plaintiff to have them checked as baggage, and thereby elected to assume the liability incident to the transportation of baggage. Was there any consideration for the checks? There are no facts from which it can reasonably be inferred that either the plaintiff or the defendant contemplated the carriage of the trunks by the defendant as a gratuitous bailee; on the contrary, the only reasonable inference is they intended that the price for the ticket should include the consideration for the checks. If the defendant intended to assume the relation of gratuitous bailee, it was its duty to give notice of this fact, when it knew the plaintiff relied upon the price of the tickets as the consideration for the checks.

The principle is well settled that the price of a ticket includes compensation for the carriage of such baggage as may be necessary for the personal convenience of the passenger. The plaintiff by the acquiescence of the defendant

was to all intents and purposes a passenger, in so far as baggage was concerned. In the case of *Marshall* v. *R. Co.,* 55 L. R. A. (Mich.), 650, the Court held that one, who purchases a railroad ticket for the sole purpose of checking his baggage upon it, with the intention of going to his destination in his private conveyance, can hold the carrier liable only as a gratuitous bailee of the baggage, and cannot recover in case it is stolen from the baggage room, unless the carrier is guilty of gross negligence. There is an exhaustive and vigorous assault upon the doctrine of that case in a note to it, in 55 L. R. A., 650. The facts of this case are, however, quite different. There was good faith on the part of the plaintiff and all the facts were made known to the agent. Furthermore, the ticket was not bought solely for the purpose of checking the baggage, as the plaintiff intended to get on board the train at Seneca and ride to Spartanburg *en route* to Charleston.

This disposes of all the exceptions except the second and seventh.

It is only necessary to refer to section 3, art. IX., of the Constitution, and to the admission in the answer that the defendant is a common carrier, to show that the second exception cannot be sustained.

The charge mentioned in the seventh exception was favorable to the defendant. It, therefore, has no ground of complaint.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.