CORNWELL, RESPONDENT, *v.* DAVIS, AGENT, ET AL., AP-PELLANTS.

(No. 5,003.)

(Submitted January 22, 1923. Decided February 10, 1923.)

[213 Pac. 218.]

*Railroads—Carriers—Livestock Shipments—Agreement to Furnish Cars—Validity—Breach of Contract—Defenses—Pleading—Mutuality of Contract—When Implied.*

Railroads—Contract of Agent to Furnish Cars Binding on Carrier.
1. A contract between the local agent of a railway company and a shipper of livestock, whereby the carrier agrees to furnish a certain number of cars at a given station on a named date, *held* not violative of the Commerce Act (U. S. Comp. Stats., secs. 8563 *et seq.*) if not discriminatory in character.

Same—Federal Control Act—Validity of Contract to Furnish Cars.
2. Since it was the intention of Congress in passing the Federal Control Act under which the railway systems of the country were placed under federal control, that each system should continue liable substantially as it was under private control, a contract of the nature of the above made by the local agent of a railway company in charge of the Director-General of Railroads, was binding on defendant Director General.

Same—Breach of Contract to Furnish Cars—War Necessities—Matter of Defense—Pleading.
3. Where in an action against the Director-General of Railroads for breach of contract to furnish stock cars at a certain time and

---

1. Liability of railroad operating under Transportation Act for discrimination in furnishing cars, see notes in Ann. Cas. 1914B, 52; 19 A. L. R. 679, 680.

[66 Mont. 100.]

place, it is sought to defend on the ground that the delay was occasioned by the war necessities of the government, such defense must be pleaded and proved.

Same—Order for Cars—Agreement to Use When Furnished Implied—Contracts—Mutuality.

4.   Where a shipper orders cars from a carrier for the shipment of goods his agreement to use them when furnished is implied, hence the contract does not lack the element of mutuality in the absence of an express agreement to that effect.

Same—Agreement to Furnish Cars may be Oral.

5.   A contract to furnish cars for the shipment of goods may be by parol or in writing and is independent of the contract under which the shipment is actually made.

Same—Parol Agreement to Furnish Cars—Jury Question—Evidence—Sufficiency.

6.   Plaintiff sued to recover damages for failure of defendant carrier to furnish nine stock cars at a certain time and place as agreed to orally by its local agent. Defendant claimed that the contract was in writing made with plaintiff and one S. jointly. The two were not partners. While S. signed an order for twenty-four cars presuming to act for himself and plaintiff jointly, he testified that he assumed it was done at the agent's request. The cattle went to market under a joint shipping contract. *Held*, that the question whether a parol agreement existed was one for the jury to determine, and that its finding that it was is supported by the evidence.

*Appeal from District Court, Valley County; C. D. Borton, Judge.*

ACTION by R. L. Cornwell against John B. Payne, Director-General of Railroads; James C. Davis, Agent under the Transportation Act, substituted. Judgment for plaintiff, and defendant appeals from it and an order denying a new trial. Affirmed.

*Mr. I. Parker Veazey, Jr., Mr. W. L. Clift* and *Mr. R. H. Glover,* for Appellant, submitted a brief; *Mr. Veazey* argued the cause orally.

The court erred in advising the jury that the plaintiff could recover if he showed that the agent promised to furnish cars, even though there was no consideration for the promise. (6 Ruling Case Law, sec. 63; sec. 7468, Rev. Codes 1921; *Chicago etc. R. Co.* v. *Dane,* 43 N. Y. 240.)

---

4.   Mutuality of contract to furnish cars to shipper, see note in 13 L. R. A. (n. s.) 164.)

In times of a car shortage, it being conceded to be the duty of the carrier to treat all alike, a station agent cannot have authority to contract to furnish cars where this would work a discrimination or defeat the carrier in the discharge of its public duties. The case of *Underwood* v. *Hines* (Mo. App.), 222 S. W. 1037, is directly in point. See, also, *Chicago & A. Ry. Co.* v. *Kirby*, 225 U. S. 155, 56 L. Ed. 1033, 32 Sup. Ct. Rep. 648 [see, also, Rose's U. S. Notes].)

As to the conclusiveness of car distribution by the government, see *Harmon* v. *Hines*, 113 S. C. 179, 101 S. E. 925; *West Brook* v. *Director-General*, 263 Fed. 211.

The following cases show that, in any event, under the testimony in this case, there was no question for the jury as to whether the contract was joint or several, but the proof showed conclusively that the transaction was a joint one and no several tender was made: *Mattock* v. *Goughnour*, 11 Mont. 265, 28 Pac. 301; *Reed* v. *Murray*, 50 Mont. 240, 146 Pac. 541. Under the decision in *American Livestock & Loan Co.*, 48 Mont. 495, 138 Pac. 1102, therefore, the defendant was entitled to judgment.

*Messrs. Norris, Hurd, Rhoades & Hallett*, for Respondent, submitted a brief; *Mr. Edwin L. Norris* argued the cause orally.

It was not necessary for the respondent to prove that the agent had the authority to make the contract. Even though there were no special contract it was the duty of the appellant, in the event that it could not furnish the cars at the time and place ordered, to notify the respondent in time to enable him to retain his cattle upon the public range, and if it did not do so it is liable for such damages as were caused by the appellant's neglect of its duty in that respect. (*Nichols* v. *Oregon S. L. Ry. Co.*, 24 Utah, 83, 91 Am. St. Rep. 778, 66 Pac. 768.) Under such circumstances the authorities appear to be substantially uniform in holding that contracts made in the manner of the one herein are valid. (*Pittsburgh C. C. &*

*St. L. Ry. Co.* v. *Racer*, 10 Ind. App. 503, 37 N. E. 280; *J. W. Stewart & Son* v. *C. R. I. & P. Ry. Co.*, 172 Iowa, 313, 151 N. W. 485; *Clark·* v. *Ulster & Del. R. Co.*, 189 N. Y. 93, 81 N. E. 766; *Texas-Midland R. Co.* v. *O'Kelley* (Tex. Civ.), 203 S. W. 152; *Harrison* v. *Mo. Pac. Ry. Co.*, 74 Mo. 364, 41 Am. Rep. 318; *Nichols* v. *Oregon S. L. R. Co.*, 24 Utah, 83, 91 Am. St. Rep. 778, 66 Pac. 768; *McNeer T. & J.* v. *Chesapeake & O. R. Co.*, 76 W. Va. 803, 86 S. E. 887.)

Such a contract is not contrary to public policy, is not violative of the Interstate Commerce Act and amendments thereto, and is not discriminatory. (*Oregon R. & N. Co.* v. *Dumas*, 181 Fed. 781, 104 C. C. A. 641; *Chicago, R. I. & P. Ry. Co.* v. *Beatty*, 42 Okl. 528, 141 Pac. 442; 10 C. J. 213), and is mutual. (*St. Louis & S. F. R. Co.* v. *Walker*, 37 Okl. 784, 133 Pac. 185.)

Much is made in appellant's brief of the congestion of traffic and the government's allocation of cars as a defense to the action. Such facts, even if true, can furnish no excuse for the failure of the defendant to perform the terms of its contract. (*Harrison* v. *Mo. Pac. Ry. Co.*, 74 Mo. 364; *Deming* v. *Grand Trunk Ry. Co.*, 48 N. H. 455, 2 Am. Rep. 267; *Gulf C. & S. F. Ry. Co.* v. *Hume*, 87 Tex. 211, 27 S. W. 110; *Nichols* v. *Oregon S. L. Ry. Co.* (Utah), *supra; Baxley* v. *T. & M. R. Co.*, 128 Ala. 183, 29 South. 451; *Meriwether* v. *Quincy O. & K. C. Ry. Co.*, 128 Mo. App. 647, 107 S. W. 434; *St. Louis I. M. & S. Ry. Co.* v. *Tilby*, 117 Ark. 163, 174 S. W. 1167.)

A carrier cannot complain of the unreasonableness of the notice to furnish cars where it failed to complain of the time given and accepted the order and expressed the assurance that it would be filled. (*Baker* v. *St. Louis R. Co.*, 145 Mo. App. 189, 129 S. W. 436.)

Is the contract joint or several? The test is whether the legal interest in the subject matter and the benefits was joint or several. "Though an obligation be joint by its terms, each obligee may nevertheless maintain an action upon it, if,

in fact, the legal interest is several, as where specific sums or benefits are made to inure to the obligees in severalty.'' (*American L. & L. Co.* v. *Great N. Ry. Co.,* 48 Mont. 495, 138 Pac. 1102; 13 C. J. 578; 1 Williston on Contracts, sec. 325; *Spangenberg* v. *Spangenberg,* 19 Cal. App. 439, 126 Pac. 379; *Atlanta Ry. Co.* v. *Thomas,* 60 Fla. 412, 53 South. 510; *Satler Lbr. Co.* v. *Exler,* 239 Pa. St. 135, 86 Atl. 793; *Anderson* v. *Nichols,* 93 Vt. 262, 107 Atl. 116.)

The mere fact that the telegram made out by the agent, Exhibit ''A,'' was signed Stephens & Cornwell, by Stephens, is not conclusive as to its joint nature. (30 Cyc. 110; 1 Williston on Contracts, sec. 325; *Curry* v. *Kansas C. P. Ry. Co.,* 58 Kan. 6, 48 Pac. 579.) The test is, What are the interests of the parties? Did the obligees suffer separate and distinct pecuniary injuries from the breach? (13 C. J. 578.) All the testimony is to the effect that they did. That obligees may have several rights is recognized by our Code. (Rev. Codes 1921, sec. 7397; see, also, *International Hotel Co.* v. *Flynn,* 238 Ill. 636, 87 N. E. 855; *Beckwith* v. *Talbot,* 95 U. S. 289, 24 L. Ed. 496 [see, also, Rose's U. S. Notes].)

A contract does not create a joint interest or partnership when there is no community of interest in the capital employed nor in the profits and losses. (*Beckwith* v. *Talbot, supra.*)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In his complaint plaintiff alleges that on September 23, 1918, he was the owner of 213 head of cattle which he desired to ship to market; that the cattle were then upon the public range, some thirty-five miles north of Glasgow, Montana; that on the day named he ordered from H. R. Cahan, the local agent of the defendant at Glasgow, nine suitable cattle cars to be at Glasgow on October 2 for the transportation of his cattle to the Union Stock-yards at Chicago; that defendant's agent then and there agreed with and promised plaintiff that

the cars would be furnished at the time and place designated; that the time intervening between the dates mentioned was a reasonable time within which defendant should have furnished the cars; that in reliance upon defendant's promise plaintiff caused his cattle to be rounded up and driven to a point near Glasgow, where they arrived on October 1; that he immediately caused notice to be given to defendant that he would be ready to load his cattle on October 2; that defendant failed, neglected, and refused to furnish the cars on October 2, and did not furnish them until October 16; that plaintiff was compelled to return his cattle to the range for feed, and because of the extra handling the cattle were greatly reduced in weight, and because of the delay he was forced to sell upon a market lower than the market prevailing at the time when the cattle would have been sold if the cars had been supplied on October 2.

The answer puts in issue most of the material allegations of the complaint; however, it is admitted that on September 23, 1918, certain cars were ordered for Glasgow for October 2, and that the cars were not furnished until October 16. Defendant denies that he agreed to furnish the cars on October 2 or on any other specified date, and alleges that the cars were furnished within a reasonable time after they were ordered.

The trial of the cause resulted in a verdict for plaintiff, and the defendant appealed from the judgment entered thereon and from an order denying his motion for a new trial. In the meantime Director-General Payne was superseded and James C. Davis, Agent under the Transportation Act of February 28, 1920 (41 Stat. 456) [Fed. Stats. Ann. (1920 Supp.), p. 65] was substituted as defendant.

At the time these cars were ordered and for more than a year thereafter the principal railways of this country, including the Great Northern Railway, were under the control of the United States in the exercise of its war powers. The management was lodged in the Director-General, who acted through regional directors and through local officers and agents. The rolling stock theretofore belonging to the re-

spective lines of railway was pooled and then apportioned among the several lines as the administration adjudged best suited to meet the exigencies of the times. During September and October, 1918, there was an extraordinary demand for equipment and a serious car shortage.

It is the contention of the defendant that, under these cir- [1] cumstances, the local agent at Glasgow did not have authority to bind the railway administration by his promise to furnish to any one shipper a given number of cars at a designated time and place; that the apportionment of equipment to the different regions and through each region to the different lines within it was a matter of governmental regulation beyond review by the courts; that defendant could not be required to discriminate in favor of one shipper and against another, and that the ultimate duty which could be imposed upon him was to furnish to plaintiff his fair proportion of the cars available under the distribution made to the Great Northern line, and that liability could be predicated only upon a breach of that duty.

It must be conceded that it was a primary purpose of the Commerce Act (4 Fed. Stats. Ann., 2d ed., p. 337, *etc.,* U. S. Comp. Stats., sec. 8563 *et seq.*) to prohibit unjust discrimination among shippers, and if the contract upon which plaintiff relies contemplated unusual service, advantage, or preference to him not open upon equal terms to other shippers, it was illegal and beyond the power of the agent at Glasgow to make (*Chicago & Alton R. Co.* v. *Kirby,* 225 U. S. 155, Ann. Cas. 1914A, 501, 56 L. Ed. 1033, 32 Sup. Ct. Rep. 648 [see, also, Rose's U. S. Notes]; *Wall* v. *Northern Pac. Ry. Co.,* 53 Mont. 81, L. R. A. 1915C, 433, 161 Pac. 518); but there is not anything upon the face of a contract to furnish nine cars at Glasgow on October 2 to suggest that plaintiff would receive more than his fair proportion of the cars available at the time, or that the service for which he contracted was not open to all others upon equal terms. It is the general rule that such a contract does not violate the Commerce Act. (*Chicago R. I. & P. Ry. Co.* v. *Beatty,* 42 Okl. 528, 141 Pac. 442.)   In

*Oregon R. & N. Co.* v. *Dumas,* 181 Fed. 781, 104 C. C. A. 641, the circuit court of appeals for the ninth circuit, in passing upon a contract similar to the one now before us, said: "It is true that a discriminatory contract between a *quasi* public corporation, such as a railroad company, and its patrons, is held to be void because of the resulting unreasonable advantage to one over another, whereas, in fact, all have a moral and legal right to equality of treatment. But it is nevertheless well settled that a carrier may bind itself by contract to furnish a shipper a specific number of cars at specific times and places, and that damages may be recovered by the shipper for the carrier's failure or delay to carry out the contract."

The decision in *Chicago & Alton Ry. Co.* v. *Kirby,* above, is not in conflict with the views herein expressed. In that case the plaintiff's declaration disclosed affirmatively that the contract involved provided for preferential service to the shipper, and that for that reason it was held to be void.

It could not be controverted that under private control the [2] Great Northern Company's agent at Glasgow would have authority to make the contract in question and bind the company thereby (*Wood* v. *Chicago, M. & St. P. Ry. Co.,* 68 Iowa, 491, 56 Am. Rep. 861, 27 N. W. 473; *Stewart* v. *Chicago, R. I. & P. Co.,* 172 Iowa, 313, 151 N. W. 485; *Easton* v. *Dudley, Receiver,* 78 Tex. 236, 14 S. W. 583; 1 Elliott on Railways, 3d ed., sec. 345; 10 C. J. 218), and it was the intention of the Congress, as indicated by section 10 of the Federal Control Act (40 Stat. 451 [Fed. Stats. Ann. (1918 Supp.), p. 762, U. S. Comp. Stats. 1918, U. S. Comp. Stats. Ann. Supp. 1919, sec. 3115¾j) that each transportation system under federal control should continue liable substantially as it was under private control, any suit, however, to be brought against the Director-General as the legal person responsible for the carrier's acts (*Hines* v. *Dahn* (C. C. A.) 267 Fed. 105; *Missouri Pac. Ry. Co.* v. *Ault,* 256 U. S. 554, 65 L. Ed. 1087, 41 Sup. Ct. 593; *Dampskibs Actieselskabet Sangstad* v. *Hustis* (D. C.), 257 Fed. 862). It follows that the contract in question is valid and binding upon the defendant. (10 C. J. 218.)

Counsel for defendant cite *Underwood* v. *Hines* (Mo. App.), 222 S. W. 1037, in support of their contention that the local agent of the Director-General has no authority to make a contract such as the one involved in the present litigation. In that case the court said: "A contract, absolute and unconditional, to have cars ready for plaintiff's use at a certain place and date, irrespective of the government's needs or of the general service to the public, is one the station agent had no authority to make." That statement, however, is explained somewhat in the concluding paragraph of the opinion wherein the court said: "The reason that no cars were obtainable until the date they were obtained was because of governmental war needs and the imperative duty to give precedence to shipments of the government; and therefore it was impossible to have cars on hand for plaintiff's use on date specified. These facts appearing in the case without controversy, the demurrer to the evidence should have been sustained." We are not .called upon to subscribe to or dissent from the views thus expressed. The Kansas City court of appeals, which pronounced the judgment, is not a court of last resort in Missouri; but, in any event, the facts recited in the opinion distinguish that case from the one now before us.

The number of cars available to the Great Northern line [3] was a matter peculiarly within the knowledge of the defendant, his agents and subordinate officers in charge of that line, and assuming, without deciding, that defendant could be heard to say that the delay in furnishing the cars was occasioned by the war necessities of the government, that was a matter of defense which was neither pleaded nor proved. (*Chicago, etc., R. Co.* v. *Wolcott,* 141 Ind. 267, 50 Am. St. Rep. 320, 39 N. E. 451.)

Again it is argued that the so-called contract, if made, lacks [4] the essential element of mutuality, in that it does not appear that plaintiff agreed to use the cars if furnished to him. This contention is devoid of merit. When plaintiff ordered the cars his agreement to use them was necessarily implied, and this rule is recognized by the authorities generally.

(*Clark* v. *Ulster & Delaware Ry. Co.,* 189 N. Y. 93, 121 Am. St. Rep. 848, 13 L. R. A. (n. s.) 164, 81 N. E. 766, and cases cited in note 12 Ann. Cas. 885.)

A serious controversy arises over the character of the contract in question. It is the contention of plaintiff that he entered into a parol agreement with the defendant to furnish him nine cars on October 2. The defendant contends that the contract was in writing, was made with Stephens and Cornwell jointly, and that plaintiff may not maintain a separate action under the decision in *American L. & L. Co.* v. *Great Northern Ry. Co.,* 48 Mont. 495, 138 Pac. 1102. Plaintiff testified that on September 23, 1918, he called at the office of the defendant in Glasgow, and ordered from the agent Cahan nine 33-foot cattle cars to be at Glasgow on October 2 for the shipment of his cattle to the Union Stockyards at Chicago; that Cahan promised and agreed that the cars would be furnished at the time and place mentioned; that James R. Stephens and Rush Jacobson were present at the time, and that Stephens ordered eleven cars and Jacobson one car. In all essential particulars plaintiff was corroborated fully by the testimony of Stephens and Jacobson. For the defendant, M. R. Underwood, employed as assistant cashier at the freight office in Glasgow during 1918, testified that on September 23 plaintiff and Stephens came to the office and inquired for agent Cahan, who was then not present; that they left the station, and later Stephens returned and stated that he desired to place an order for cars, and that he (Underwood) wrote out an order, which Stephens signed. That order, designated in the record "Exhibit A," reads as follows:

"Glasgow 9–23, W. E. B. Wolf Point: Please furnish 24–33 –ft. cars to load cattle for So. St. Paul Oct. 2nd, Shippers Stephens and Cornwell [Signed] R. H. Cahan, Agent. Stephens & Cornwell, by Stephens."

Cahan testified that he did not have any negotiations with plaintiff on September 23, 1918, and that his only knowledge of the transaction was obtained from the order, Exhibit "A," which he caused to be transmitted to the chief dispatcher at

Wolf Point. It appears further that the Cornwell cattle and the Stephens cattle were on the range together, that they were gathered together and driven to the stockyards at Glasgow together, and that they were shipped in twenty cars to Chicago under a joint shipping contract. There is evidence, however, that the cattle were separated in the yards at Glasgow; that plaintiff loaded his cattle in nine cars, and that Stephens loaded his in eleven cars.

There are other circumstances emphasized by counsel for the defendant, but they reflect only upon the credibility of the plaintiff and his witnesses.

There was not any evidence that Stephens and Cornwell [5, 6] were partners. The mere fact that Exhibit "A" was signed by Stephens would not warrant a finding that plaintiff had authorized the act, and certainly it cannot be said as a matter of law that plaintiff's acceptance and use of nine cars on October 16 for the transportation of his cattle to Chicago constituted a ratification of an order for twenty-four cars for shipment to South St. Paul. It is made apparent from the testimony that neither Stephens nor Cornwell contemplated shipping his cattle to South St. Paul. Stephens admits that he signed Exhibit "A," and his only explanation is that he presumes the agent asked him to do so. Plaintiff admits that the cattle went forward to market under a joint shipping contract, and his testimony is that he did not know why the shipment was billed out in the name of Stephens and Cornwell.

It is elementary that the contract to furnish cars may be by parol or in writing (*Pope* v. *Wisconsin Cent. Ry. Co.*, 112 Minn. 112, 127 N. W. 436; 10 C. J. 212), and that it is independent of the contract under which the shipment is actually made (*Clark* v. *Ulster & Delaware Ry. Co.*, above). Whether the parol agreement existed in this instance was a question of fact for determination by the jury (*Pope* v. *Wisconsin Cent. Ry. Co.*, above; 10 C. J. 215). It is not the province of this court to weigh the evidence or pass upon the credibility of the witnesses, and, in view of the testimony of plaintiff, Stephens,

and Jacobson, it cannot be contended that the finding that the parol agreement was made is not supported by the record.

The other assignments have been considered, but they do not present any reversible error.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.

Rehearing denied March 2, 1923.

Cause taken to the supreme court of the United States by appellant railway company on writ of *certiorari.*