12324

STROCK v. SOUTHERN RY.—CAROLINA DIVISION

(140 S. E., 470)

1. CARRIERS—CONTRACT TO FURNISH CARS TO SHIPPER ON SPECIFIED DAY
   FOR TRANSPORTATION OF PROPERTY INTRASTATE HELD VALID AND EN-
   FORCEABLE (CIV. CODE 1922, § 4842).—Contract between shipper and
   common carrier for carrier to furnish cars to shipper on specified
   days for transportation of property of shipper between points
   within State of South Carolina is valid and enforceable, and not
   within inhibition of Civ. Code 1922, § 4842, making it unlawful for
   shippers to receive rebate, drawback, or other advantage on ship-
   ments made or services rendered or received by them.

2. CARRIERS—SHIPPER CANNOT RECOVER DAMAGES AGAINST COMMON
   CARRIER FOR ITS FAILURE TO FURNISH CARS AT SPECIFIED TIME FOR
   INTERSTATE SHIPMENT.—A shipper cannot recover damages against
   common carrier for its failure to furnish cars at specified time and
   place for interstate shipment, if shipper relies solely on express
   contract with carrier to furnish cars for interstate shipment.

3. CARRIERS—IN ABSENCE OF PROHIBITORY STATUTE, CARRIER MAY CON-
   TRACT TO FURNISH CARS FOR INTRASTATE SHIPMENTS AT STATED TIMES.
   —In absence of prohibitory statute, right of a common carrier to
   make an agreement with a shipper to furnish shipper cars for use
   in transportation between intrastate points cannot be denied.

Before WILSON, J., Orangeburg, October, 1925. Ap-
peal dismissed.

Action by H. M. Strock against the Southern Railway—
Carolina Division. From a judgment for plaintiff, defend-
ant appeals. Appeal dismissed, and case remanded for
further proceedings.

The complaint, demurrer, order, and exceptions are as
follows:

COMPLAINT

(1) That the defendant, Southern Railway—Carolina
Division, was at the times hereinafter mentioned and is now
a railroad corporation duly authorized organized, and exist-
ing under and by virtue of the laws of this State, and as
such has capacity to sue and be sued.

(2) That the defendant, Southern Railway—Carolina Division, does now and did at the times hereinafter mentioned own, control, and operate, as lessors, a line of railroad in the State of South Carolina, passing through Orangeburg County and Dorchester County, within said State, and as such is a railroad corporation.

(3) That prior to May 23 the plaintiff was engaged, or was about to become engaged, in the business of cutting, hauling, and selling logs near one of defendant's stations commonly known as Fifty-eight, and at said time the plaintiff employed a large force of hands and used equipments for cutting and hauling logs, and cut and hauled a large number of logs per week which were ready for weekly shipment, which was necessary as same would damage and the prices fluctuate from week to week.

(4) That prior to May 23, 1923, plaintiff went to the defendant and informed it that he was engaged in the business of cutting and hauling logs for market and had a large force of hands employed in said business and he would have a weekly output of logs for shipment on and over defendant's railroad to different markets and to take care of said output of logs it would be necessary for two cars per week to be placed at defendant's station Fifty-eight, to be loaded by this plaintiff with logs for shipment, if he was to continue his logging operations, as it was necessary that the shipment of logs be made weekly as they would deteriorate and damage if they were allowed to lay upon the ground and the prices of same would fluctuate, and if the cars were so placed he would pay the usual charges or freight therefor.

(5) That the defendant assured the plaintiff and agreed with him that the cars would be furnished weekly as the plaintiff ordered the same, to take care of his logs, and caused him to continue to employ his force of lands and his operations in the log business, and that the defendant could and would handle the same and cars would be placed at said

station as they were ordered by the plaintiff of the defendant for the regular prices charged therefor.

(6) That relying upon said agreement and representations made and entered into by and between the plaintiff and defendant he purchased timber and employed a great number of hands from May, 1923, to the last of September, 1923, purchased, cut, and hauled a large quantity of logs, and placed same upon the yard of the defendant at said station to be shipped to various markets and during said time went to the defendant every Monday of each week and notified it that the logs were on the yard at said station for shipment and ordered two cars to be placed there per week, which if furnished weekly was sufficient to transport said logs to markets designated by the plaintiff, and agreed to pay the usual charges therefor.

(7) That the plaintiff fully performed said agreement on his part, the defendant willfully, wantonly, and negligently and fraudulently failed and refused to perform said agreement on its part with the intent to injure this plaintiff knowingly, and this plaintiff was thereby cheated, defrauded, and damaged by the defendant, done and committed in the following particulars in violation of said agreement duly made with this plaintiff, to wit:

(a) That between the months of May and October, 1923, the defendant failed and refused to furnish plaintiff with cars at said station to transport his logs to market as they were ordered by him every Monday of each week to be placed and furnished that week at said station and according to the terms of said agreement, knowing the plaintiff was dependent upon the money derived from the sale of the same with which to operate and carry on his said logging business but furnished him with a lesser number of cars and at long intervals apart which forced him to disarrange his whole business, greatly curtailing his output, and same, when they were furnished, were in quantities and he was forced

to discontinue the cutting of logs and hauling them and to use his whole force of hands to load the same on said cars at a great inconvenience and damage.

(b) The defendant, knowing the plaintiff was only prepared to handle and load his logs on cars, during said time as they were ordered by him every Monday of each week from May to October, 1923, as aforesaid, but failed and refused to furnish cars to the plaintiff as they were ordered by him as it had agreed to do, but such cars as were furnished were placed at said station in quantities, and this plaintiff was unable to load them within the time allowed, but loaded same with as much rapidity as possible to his inconvenience and damage, but the defendant charged him with demurrage thereon amounting to $26, making and causing his transportation charges to be higher than those of its other customers and patrons whom defendant furnished cars as the same were ordered, thus discriminating against this plaintiff and at same time cheating and defrauding him to the amount of said demurrage which was knowingly done.

(c) That from July, 1923, to August, 1923, although plaintiff, under his agreement with the defendant, placed logs on defendant's yard at said station, and ordered cars every Monday of each week to be placed at the said station as aforesaid, the defendant failed and refused to furnish him with cars during said time with which to transport his logs to market as it has agreed to do, and on that account his logs damaged and deteriorated in quality and the prices of same declined to the injury and damage of the plaintiff.

(d) That on or about September 6, 1923, the defendant furnished plaintiff with cars less in number that he had ordered, and the plaintiff loaded same with logs, and the defendant accepted same as freight to be transported to a place in said bill of lading stated and there to be delivered to the consignee named by the plaintiff and agreed to by defendant for the purposes of marketing the same of the value

of, at said time, $83, that said defendant hauled said logs from said station, but has never delivered same at said place to the consignee, as it agreed to do, to a total loss to the plaintiff, thereby injuring and damaging him.

(e) That although, from May, 1923, to October, 1923, plaintiff ordered cars from the defendant every Monday of each week to be placed at said station two cars each week during said time, as defendant had agreed to furnish as aforesaid, but failed and refused to do so, and on account thereof plaintiff had left on the yard of the defendant which was tendered by plaintiff to defendant, under said agreement, for shipment to market, logs measuring 1,150 feet, but defendant failed and refused to transport same to market, as it had agreed to do, which was a total loss to this plaintiff, to his injury and damage.

(8) That the said acts of the defendant aforesaid were done and committed knowingly, maliciously, fraudulently, negligently, and with the intent to discriminate against and injure and damage and defraud the plaintiff to his damage $10,000.

Wherefore the plaintiff demands judgment against the defendant $10,000, and the costs of this action.

### DEMURRER

(1) That said complaint does not state facts sufficient to constitute a cause of action:

(a) In that it appears upon the face of the said complaint that the contract upon which the cause of action is based is an express contract to furnish cars between specified dates for transportation of logs, and such contract under the statute law of South Carolina, and particularly Sections 4842, 4843, 4851, and 4852, Vol. 3, Code, 1922, and under the rules and regulations of the Railroad Commission of South Carolina, prohibiting preferences, discriminations, and undue advantages by railroads, there being nothing in the complaint to show that said contract was made with the

approval or consent of said commission, or was an exception to exception to any of its rules or regulations, is void, and no action will lie for the breach thereof, since it imposes on the railroad an obligation greater than that imposed by the said statutes, and rules and regulations of the said commission, is a burden on both inter and intra state commerce, gives the particular shipper a special advantage or preference, and discriminates against the public generally.

(b) In that it appears upon the face of the said complaint that the contract upon which the cause of action is based is an express contract to furnish cars between specified dates for transportation of logs, and said contract under the Interstate Commerce Act, and especially Sections 8563, 8565, and 8583, U. S. Compiled Statutes 1923 (49 USCA, §§ 1, 3, 15), the defendant being subject to the provisions thereof, and there being nothing in the complaint to show that the published tariffs governing the contemplated shipments provided in terms therefor, is void, and no action will lie for the breach thereof, since it imposes on the railroad an obligation greater than that of using due diligence to provide cars for loading at time desired, on reasonable notice, implied in the tariff, and therefore, gave the shipper a special advantage or preference not open to the public generally and discriminated against the public generally.

(2) That the Court has no jurisdiction of the subject of the action:

(a) In that it appears upon the face of the said complaint that the contract upon which the cause of action is based is an express contract to furnish cars between specified dates for transportation of logs, and under the Interstate Commerce Act, and especially Sections 8563, 8565, and 8583, U. S. Compiled Statutes 1923, the power to regulate and control the furnishing and distribution of cars to shippers by common carriers, and especially by this defendant, is conferred exclusively upon the Interstate Commerce Commis-

sion, and that Commission has absolute and exclusive jurisdiction over the subject.

### ORDER OVERRULING DEMURRER

Upon hearing the demurrer to the complaint in the above-entitled action, ordered that said demurrer be and the same hereby is overruled.

### EXCEPTIONS

(1) His Honor erred in overruling the defendant's demurrer to the complaint herein, made upon the ground that said complaint failed to state facts sufficient to constitute a cause of action, in that it appears upon the face of the said complaint that the contract upon which the cause of action is based is an express contract to furnish cars between specified dates for transportation of logs; the error being that such contract, under the statute law of South Carolina, and particularly Sections 4842, 4843, 4851, and 4852, Vol. 3, Code, 1922, and under the rules and regulations of the Railroad Commission of South Carolina, prohibiting preferences, discriminations, and undue advantages by railroads, there being nothing in the complaint to show that said contract was made with the approval or consent of said commission, or was an exception to any of its rules or regulations, is void, and no action will lie for the breach thereof, since it imposes on the railroad an obligation greater than that imposed by the said statutes, and rules, and regulations of the said commission, is a burden on both inter- and intrastate commerce, gives the particular shipper a special advantage or preference, and discriminates against the public generally.

(2) His Honor erred in overruling the defendant's demurrer to the complaint herein, made upon the ground that said complaint failed to state facts sufficient to constitute a cause of action, in that it appears upon the face of the complaint that the contract upon which the cause of action is.

based is an express contract to furnish cars between specified dates for transportation of logs; the error being that such contract under the Interstate Commerce Act, and especially Sections 8563, 8565, 8583, U. S. Compiled Statutes 1923, the defendant being subject to the provisions thereof, and there being nothing in the complaint to show that the published tariffs governing the contemplated shipments provided in terms therefor, is void, and no action will lie for the breach thereof, since it imposes on the railroad an obligation greater than that of using due diligence to provide cars for loading at time desired, on reasonable notice, implied in the tariff, and therefore, gave the shipper a special advantage or preference not open to the public generally and discriminated against the public generally.

(3) The Court erred in overruling the defendant's demurrer to the complaint herein, made upon the ground that the Court had no jurisdiction of the subject of the action, in that it appears upon the face of the complaint that the contract upon which the cause of action is based is an express contract to furnish cars between specified dates for transportation of logs; the error being that under the Interstate Commerce Act, and especially Section 8563, 8565, and 8583, U. S. Compiled Statutes, 1923, the power to regulate and control the furnishings and distribution of cars to shippers by common carrier, and especially by this defendant, is conferred exclusively upon the Interstate Commerce Commission, and that Commission has absolute and exclusive jurisdiction over the subject.

*Messrs. Adam H. Moss, Frank G. Tompkins* and *Charles Clark,* for appellant, cite: *Contract at bar is void, violates* Secs. 4841–4843, 4851, 4852, Code. *Power to make such contract belongs solely to State Railroad Commission:* 73 S. C., 40. *Publication of contract necessary before parties to action could lawfully agree to its terms:* 95 S. C., 430; 118 S. C., 131; 43 Sup. Ct., 47; 126 S. E., 674; 225 U. S.,

155; 210 N. W., 81; 127 S. E., 639; 44 Sup. Ct., 410; 46 Sup. Ct., 220. *Violates transportation act,* Sec. 8563, U. S. Comp. Stat., 1925. *Purpose of act to secure uniformity of of rates:* 118 S. C., 125. *Southern Railway Company is· lessee of Columbia Division; within the statute:* 23 S. C., Stat., 1152; 5 Elliott on Railroads (3rd Ed.), Sec. 2553. *Any burden imposed on defendant will fall on Southern Railway Company:* 108 S. C., 135. *Interstate Commerce Commission regulates Interstate Commerce:* 42 Sup. Ct., 232; 44 Sup. Ct., 169; 46 Sup. Ct., 452; 45 Sup. Ct., 243; 44 Sup. Ct., 610; 46 L. R. A. (N. S.), 203. *Whenever the interstate and intrastate transactions of carriers are so related that the government of one involves the contract of the other, Congress and not the State regulates:* 234 U. S., 833; 47 S. Ct., 130; 230 U. S., 352. *Court without jurisdiction here:* 44 S. Ct., 610; 45 S. Ct., 234; 38 S. Ct., 389; 279 S. W., 947; 36 S. Ct., 228; 230 U. S., 419; 42 S. Ct., 477; 11 Fed. (2nd), 312. *Courts cannot be resorted to · until administrative questions have been determined by interstate Commerce Commission:* 38 S. Ct., 550. *Order of settlement not warranted; Court will not read into a slovenly pleading that which was never intended:* 60 S. C., 521; 101 S. C., 440.

*Mr. W. B. Martin,* for respondent.

November 25, 1927.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action was commenced in May, 1925, in the Court of Common Pleas for Orangeburg County, "and is for damages, which, as the complaint alleges, resulting from the breach by the defendant of an express contract between plaintiff and defendant, and damages from other causes of action as alleged in said complaint, and in which contract, the complaint alleges, defendant was to furnish plaintiff cars

between specified dates for the transportation of logs." The defendant demurred to the complaint upon the grounds (1) that it did not state facts sufficient to constitute a cause of ·action, and (2) that the Court had no jurisdiction of the subject of the action. The demurrer was heard by his Honor, Judge Wilson, who issued an order overruling the same. The case comes now before this Court on appeal from the order of his Honor, Judge Wilson. The complaint, demurrer, order, and exceptions should be reported.

While I am in accord with the views expressed in 1, 2 the opinion of Mr. Justice Cothran in this case as to the appeal being dismissed and the case remanded to the Circuit Court, with leave to the defendant to move for an order requiring separate statements of the alleged causes of action and that they be made definite and certain, and to answer, I dissent from the view expressed as to an agreement to furnish cars at stated times being an illegal discrimination. I concede, under the authority of *Davis v. Cornwell,* 264 U. S., 560; 44 S. Ct., 410; 68 L. Ed., 848, cited in the opinion of Mr. Justice Cothran, that a shipper cannot recover damages against a common carrier caused by the common carrier failing to furnish cars at a specified time and place for an interstate shipment if the shipper relies solely on an express contract with the common carrier to furnish cars at a specified time and place for an interstate shipment. In *Davis v. Cornwell, supra,* the shipper brought an action in the Montana State Court against the carrier to recover damages for breach of a contract to furnish empty cars on a day certain for loading cattle to be transported in interstate commerce. The plaintiff sued on an express contract to furnish cars on the dates named. The jury was instructed that, if the promise was made, the defendant was liable for its breach, even if the carrier was unable to furnish cars. This instruction to the jury by the trial Judge was, it seems, the cause of the case being appealed to the

United States Supreme Court after the State Supreme Court
of Montana (66 Mont., 100; 213 P., 218) had affirmed
the judgment of the lower Court, rendered in favor of the
plaintiff.    Mr. Justice Brandeis, the writer of the opinion
rendered by the United States Supreme Court, states,
"Whether, under the Interstate Commerce Act as amended,
the express promise to furnish cars was valid is the only
question requiring decision," and that Court, in its decision,
states that "the transportation service to be performed was
that of common carrier under published tariff," and "not a
special service under a special contract," and, further, that
"a contract to furnish cars on a day certain imposes a
greater obligation than that implied in the tariff," and also
that "the contract to supply cars for loading on a day
named provides for a special advantage to the particular
shipper."    Thereupon that Court reversed the Montana
Court, and, in so far as interstate shipments are concerned,
the decision of that Court is binding upon this Court.

Just at this juncture, for the benefit of the shippers of
this State, I think it well to make this observation:    That
the decision rendered by the United States Supreme Court
in the case of *Davis v. Cornwell, supra,* does not preclude
the shipper from recovering damages against the common
carrier in such cases, where the shipment is interstate com-
merce, if there is a lack of due diligence on the part of the
common carrier to furnish the cars at the time and. place
promised, and it would be competent, further, to prove the
said contract for the purpose of showing that the carrier
had received notice that the shipper desired cars at the time
and place named for the shipment of his property, or as
evidence that the common carrier had not made reasonable
effort to supply the cars; it being the obligation of the
common carrier, implied in the tariff, to use due diligence
to provide, upon reasonable notice, cars for loading at the
time desired, as set forth under the foregoing mentioned

decision. As I understand the opinion of the Court rendered in that case, the case was reversed on the ground that the shipper based his action absolutely and solely upon an express contract of the common carrier to furnish cars at a specified time to be loaded with property for interstate transportation. Further, as I take it, this view is not inconsistent with the view expressed in the opinion of Mr. Justice Cothran as to interstate shipments.

In referring to the opinion in *Davis v. Cornwell, supra,* I have not discussed the Federal Statute, which was under consideration by the writer of the opinion in that case for the reason that such a discussion could serve no useful purpose, since, as hereinbefore stated, that decision is binding on this Court as to interstate shipments. While the decision of that Court is entitled to the highest respect and greatest deference, it is, however, not binding on this Court in intrastate matters, and I can see no good reason for placing the construction on the South Carolina Statute under consideration in this case that the Federal Court has placed on a Federal Statute involved in interstate shipments, even though the wording of a portion of the two be somewhat similar. Under the demurrer, the defendant contends that the plaintiff' cause of action, which is based on an express contract to furnish cars between specified dates for transportation of logs, is void under Section 4842 et seq., Vol. 3, of the Code of 1922, and that an action will not lie for the breach of such a contract, and further contends that it imposes on the railroad an obligation greater than that imposed by the South Carolina Statute and rules and regulations of the South Carolina Railroad Commission, that it is a burden on commerce, gives a particular shipper a special advantage or preference, and discriminates against the public generally. Mr. Justice Cothran, in his opinion, holds that "the alleged agreement amounts to an illegal discrimination and cannot be enforced," and further holds that "it is in violation of the

Statutes of South Carolina (Section 4842 et seq., Vol. 3, of the Code of Laws of South Carolina). * * *" After a careful consideration of the question, I am unable to accept this view, and therefore dissent.

Just here I desire to call attention to the fact that there is nothing in the pleadings, so far as I have been able to ascertain, that shows that the cars were to be used for interstate shipments, and therefore we must assume that the cars were intended to be used for intrastate shipments and not interstate shipments, and the Federal Statute and rules of the Interstate Commerce Commission are not involved in this case; that is, under the pleadings as they now stand. According to my view, the alleged express contract between the plaintiff and the defendant whereby the defendant agreed to furnish the plaintiff cars on a specified day for the transportation of logs is not void, does not give the particular shipper a special advantage or preference, does not discriminate against the public, is not an illegal discrimination, and is not in violation of the Statutes of South Carolina. I find no provision in the Statute cited which, to my mind, could be construed as prohibiting the making of such a contract. Section 4842, Vol. 3, of the Code, which has been referred to, contains this provision:

"It shall be unlawful for any person so engaged as aforesaid, or person engaged solely in the shipment or receiving of property, directly or indirectly, to allow or receive any rebate, drawback or other advantage, in any form, upon shipments made or services rendered or received by them as aforesaid."

I do not think such a contract as the one under consideration could be construed "to allow or receive any rebate, drawback or other advantage"; neither does the contract give a preference to the particular shipper, nor does it discriminate against others. The recognition of the right of a shipper to make a contract with a common carrier for cars on a

specified day for the transportation of his property is but
the recognition of an orderly way of transaction of business.
It enables the owner of property to know when to engage
laborers for the purpose of assembling his property for ship-
ment, and further enables him not only to make contracts
with laborers in a businesslike manner, but it enables him
to make contracts with parties at a distance for the sale and
delivery of his property to be transported and delivered
with some degree of certainty. Take this right away and
you, to a great extent, deprive the shipper of a market for
this property and thereby indirectly destroy his property,
discourage the production of property, and paralyze business.
Take for example the grower of farm products—for in-
stance, some perishable crop—it is absolutely necessary for
him to know days ahead when he can get cars for loading
and transporting the crops so made; otherwise, he cannot
contract for the sale of the crop; neither can he contract for
gathering and loading the same, and he is therefore abso-
lutely "at sea," and, as a result, the crop may become a total
loss. No man or class of men can conduct a business under
such conditions. Why should a common carrier not be
permitted to obligate to furnish cars on a certain day?
Such a right certainly does no injury to the common carrier,
but, on the other hand, it enables the carrier to better plan
to serve the public, build up business, and thereby increase
its revenue. In what way does such a right discriminate
against the public  All shippers have the same right to
contract for cars; they are all on an equal footing, and such
a right and system simply enables the common carrier to
handle its business in an orderly way. Again, why place a
construction on a South Carolina Statute that would deprive
the shipper and common carrier of the right to make a con-
tract to furnish cars on a certain day for the transportation
of property when such an intent and purpose is not clearly
shown by the wording of the Statute? Did the Legislature

of South Carolina intend that this Statute should be thus construed. There is certainly nothing in the context to give this impression, and, under the view I take, such a construction should not be given to the Statute when there is nothing in the context to show that such was the intention and purpose of the Legislature.

I further hold that, in the absence of a Statute of this State prohibiting the making of such a contract between shipper and common carrier, the right to make such a contract cannot be denied. This position is supported by the decisions of this Court and by other leading authorities.

The case of *Mauldin v. Seaboard Air Line Railway,* 73 S. C., 9; 52 S. E., 677, clearly upholds the position that a common carrier may contract with a shipper to furnish cars on a specified date for the transportation of property of the shipper. The opinion of the Court in that case was written by the late Mr. Justice Woods, and, in dealing with this question, Mr. Justice Woods used the following language:

"If a common carrier assumes a contractual obligation outside of and beyond the duty imposed· by public policy, it must perform the contract or pay the damages, unless it can show circumstances which relieve from the performance of contracts generally, and unexpected emergencies in its business would not be sufficient to excuse it."

Mr. Justice Woods cites in support of this position 4 Elliott on Railroads, § 1473. The writer of that opinion further quotes with approval the following language from 5 A. & E. Enc. of Law, 168:

"Where there is a sudden and unusual pressure of business, arising from exceptional causes, and which the company could not reasonably be expected to have anticipated, it is not liable for the delay thereby necessitated, *unless it had specially contracted to furnish such transportation.* * * *"    (Italics ours).

It will thus be seen from this opinion of Mr. Justice Woods, as the organ of the Court, that the Court clearly recognizes the general rule of the right of shipper and common carrier to make such a contract as the one we have for consideration. The case of *Mathis v. Southern Railway,* 65 S. C., 271; 43 S. E., 684; 61 L. R. A., 824, likewise sustains the position of the right of a shipper to make a contract with a common carrier to furnish cars to the shipper on a specified date. The opinion in this case was written by the late Chief Justice Gary, then Associate Justice, and, in discussing this question, he used the following language:

"The complaint alleges that the plaintiff not only notified the defendant of the intended shipment, but that it agreed to furnish the refrigerator cars. If this was the fact, the defendant could not relieve itself from liability under the facts mentioned in the exceptions."

I call attention to the fact that the South Carolina Statute which is now before the Court for consideration was enacted in its present form before the rendering of the above-mentioned opinions. In the case of *Clark v. Railway,* 189 N. Y., 93; 81 N. E., 766; 13 L. R. A. (N. S.), 164; 121 Am. St. Rep., 848; 12 Am. Cas., 883, in discussing this question, the New York Court used this language:

"The binding character of such an agreemnt is recognized by the text-writers, and by the Courts wherever the question appears to have arisen."

The Supreme Court of Georgia, in the case of *Railway v. Thompson,* 133 Ga., 127; 65 S. E., 285, holds to the same effect as the above-mentioned New York case. In 10 C. J., p. 212, §§ 290 to 291, we find the principle stated thus:

"The carrier may make a binding contract to furnish cars at specified times and places, and will be liable for all damages to the shipper caused by failure or delay in carrying out such contract, and the contract may be by parol as well as in writing, and for interstate as well as intrastate shipments.

Contracts of this character are not invalid as contrary to
public policy and discriminatory, and are not prohibited by
the Carmack Amendment.  The contract must be express,
for otherwise the proposing shipper has no action, save on a
breach of the carrier's general common-law duty to furnish
cars within a reasonable time.  The rules applicable to con-
tracts generally, making consideration and mutuality es-
sential to their validity, apply to contracts of the character
under consideration.  Whether or not a contract to furnish
cars at a particular time and place exists, and whether or
not there has been a sufficient compliance therewith must be
determined by the facts of each particular case and by the
application of the ordinary rules governing the interpretation
of contracts."

4 R. C. L., p. 679, § 154, lays down the same rule as
*Corpus Juris.*

I, therefore, hold that a contract between a shipper and
a common carrier for the common carrier to furnish cars to
the shipper on a specified day for the transportation of prop-
erty of the shipper, between points within the state of
South Carolina, is valid and enforceable in the Courts of this
state.

This opinion was written as a dissent in part to the
opinion of Mr. Justice Cothran; but, since it has been con-
curred in by Mr. Justice Stabler and Acting Associate
Justice Whiting, it becomes the judgment of this Court,
which is that the appeal be and the same is hereby dismissed
and the case remanded to the Circuit Court for such further
disposition as is not inconsistent with the views expressed
in this opinion, with leave to the defendant to move for an
order requiring separate statements of the alleged causes
of action and that they be made definite and certain, and to
demur or answer; also with leave to the plaintiff to make
such additional allegations as he may be advised, consistent
with the rules of pleading.

MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUS-
TICE WHITING, concur.

MR. ACTING ASSOCIATE JUSTICE WHITING:    I agree
with the views stated in the opinion of Mr. Justice Carter.
The reasons assigned for his conclusions seem to be clear
and convincing.    The question involved, however, is essen-
tially one of public policy under the South Carolina Stat-
utes.    Being mindful of the fact that in participating in
this decision I am filling a temporary appointment only,
I do not feel that an opinion by a divided Court, which
is made possible only through my concurrence as an act-
ing Associate Justice, should be extended beyond the absolute
requirements of the present cause.    Any other position
would, it seems to me, permit members of the bar, who are
almost necessarily affected, to some degree at least, by the
associations and connections of active practice, to exercise
at times controlling influence in establishing precedents of
the broadest scope and character, quite conceivably, in
causes where the circumstances of the particular appeal
might involve the determination of the most important
questions of public policy.

As this case goes back in any event for a more definite
statement of the alleged causes of action, and especially as
the amendment of the complaint may result in altogether
eliminating the point of controversy in the present appeal,
I think that the opinion now declared should not have
effect as the final determination of the Court upon the sub-
ject. .My concurrence in the opinion of Mr. Justice Carter
is therefore expressed from the viewpoint, and with the
desire, that it should not be regarded as precluding, or in
anywise prejudicing, the right of the defendant, Southern
Railway Company, to obtain, before the Court as regularly
constituted, a review and reconsideration of the conclusions
announced, in any appeal that may be taken from final
judgment.

MR. JUSTICE COTHRAN (dissenting) : This is an action for damages alleged to have resulted from the breach of an express contract "and from other causes of action as alleged in the complaint."

The complaint contains at least two causes of action, not separately stated as the statute requires : (1) For damages resulting from the breach of an alleged agreement on the part of the railway company to supply the plaintiff with at least two cars per week, for the shipment of sawlogs, in the production of which the plaintiff was extensively engaged, at or near a station on the defendant's line known as "Fifty-Eight," in Orangeburg county. The shipments were expected to be made from that point to other points. It does not appear whether the points of destination were within or beyond the limits of this state. (2) For damages resulting from the alleged failure of the defendant to deliver a certain shipment of logs which had been received by it for transportation.

The complaint was subject to a motion to have the causes of action separately stated and to a motion to have the complaint made more definite and certain in the statements of the causes of action. These motions were not noticed, but a demurrer was interposed upon grounds which will be reported. It was overruled by his Honor, Judge Wilson, and hence this appeal. The complaint states a cause of action on the second ground above referred to, and for that reason a demurrer to the complaint as a whole could not properly have been sustained.

With reference to the cause of action based upon a specific agreement on the part of the railroad company to supply cars at stated times, it is conceded that, if the cars were to be used in *interstate* commerce, the alleged agreement constituted an illegal discrimination, not authorized by the published tariffs, and cannot form the basis of an action for its breach. *Davis v. Cornwell,* 264 U. S., 560; 44 S. Ct., 410; 68 L. Ed., 848, citing a long list of cases in the margin.

Assuming that the cars were to be used in *intrastate* shipments, the question is, Does the alleged agreement offend against the laws of South Carolina? Section 4842, 3 Code 1922, provides:

"It shall be unlawful for any person so engaged as aforesaid, or person engaged solely in the shipment or receiving of property, *directly or indirectly, to allow* or receive any rebate, drawback *or advantage, in any form,* upon shipments made or services rendered or received by them as aforesaid."

The question is further narrowed to this: Does the agreement to furnish two cars per week, for an indefinite period, for the movement of the plaintiff's product, regardless of conditions, congested traffic, inability to obtain cars, or other cause consistent with the exercise of due care, on the part of the carrier, constitute the *allowance,* direct or indirect, of an *advantage* to the particular shipper, over what the ordinary shipper had the right to demand?

As between a common carrier and an ordinary shipper, that is, one with whom the carrier has not entered into any special agreement, the obligation of the carrier, upon application for shipping facilities, is to use due diligence to provide, upon reasonable notice, the shipping facilities required. This obligation includes the obvious duty to keep for use such rolling stock as the requirements of ordinary business make necessary, but not the duty to keep extra rolling stock to meet extraordinary or unprecedented requirements. 4 Elliott, Railroads, § 2219. "It is in general bound to furnish suitable cars upon reasonable notice and with reasonable diligence whenever it can do so without jeopardizing its other business. But the duty is not absolute under all circumstances to furnish any particular number of cars at any particular time, in the absence of a special contract.' Id., 2344.

In 4 Elliott, Railroads, § 2222, it is said, assuming that such a contract is authorized:

"Where a railroad company expressly undertakes by special contract to furnish cars at a specified time, it is bound to perform its contract. Where there is no express contract, then, as we have seen, an unusual press of business may excuse the company for a failure to furnish cars, but where there is an express contract (of course meaning, I interpolate, an *enforceable,* express contract), the rule is that a press of business, although unusual and unexpected, will not relieve the company from liability."

In the case of *Mauldin v. Railroad Co.,* 73 S. C., 9; 52 S. E., 677, the Court said:

"Another request erroneously refused was as follows: 'The obligation to furnish cars in this case is an obligation * * * as binding as if the defendant railroad had contracted to furnish the cars. In this case the defendant is not liable if it has shown a reasonable excuse for failure to furnish the cars; heavy and unprecedented traffic, not reasonably to be expected and prepared for, would excuse the railroad for a deficiency of cars.'"

In sustaining an exception to the refusal to this request, the Court said:

"If a common carrier assumes a contractual obligation outside of and beyond the duty imposed by public policy, it must perform the contract or pay the damages, unless it can show circumstances which relieve from the performance of contracts generally, and unexpected emergencies in its business would not be sufficient to excuse it."

The Court added:

"Here, however, the claim is not based on a contract, but on the ordinary public duty of the carrier to receive and transport promptly all freight offered."

It is clear that the Court did not have in mind the question now presented as to the validity of the special agreement to furnish cars. Doubtless, but for Section 4842, the contract would have been enforceable as applied to intrastate shipments. This matter was not before the Court and was

not discussed. Of course, the Court's reference was to an enforceable contract and what was said was intended to emphasize the difference between the general obligation of a carrier and its obligation under a special enforceable contract.

So in *Mathis v. Railroad Co.,* 65 S. C., 271; 43 S. E., 684; 61 L. R. A., 824, no question was suggested or discussed as to the enforceability of a special agreement to furnish cars at a stated time.

These authorities clearly recognize a material distinction between the case of an ordinary shipper requiring shipping facilities and that of a particular shipper suing for the failure of the the carrier to comply with an express enforceable contract to furnish such facilities. It is lucidly developed in the case above cited from the Supreme Court of the United States (*Davis v. Cornwell,* 264 U. S., 560; 44 S. Ct.; 410; 68 L. Ed., 848) :

"The agent's promise that the cars would be available on the day named was introduced *to establish an absolute obligation to supply the cars,* not as evidence that the shipper had given due notice of the time when the cars would be needed, or as evidence that the carrier had not made reasonable efforts to supply the cars. The obligation of the common carrier implied in the tariff (and, I interpolate, under its common-law public relation) is to use diligence to provide, upon reasonable notice, cars for loading at the time desired. A contract to furnish cars on a day certain imposes a greater obligation than that implied in the tariff. For, under the contract, proof of due diligence would not excuse failure to perform. * * * The contract to supply cars for loading on a day named *provides for a special advantage* to the *particular shipper,* as much as a contract to expedite the cars when loaded. It was not necessary to prove that a preference resulted in fact. *The assumption by the carrier of the additional obligation was necessarily a preference.*"

In *Chicago, etc., R. Co. v. Kirby,* 225 U. S., 155; 32 S.
Ct., 648; 56 L. Ed., 1033, Ann. Cas., 1914-A, 501, the
plaintiff sued upon a special contract to expedite the shipment
of horses by making a certain connection at a certain point
with a fast stock train known as the "Horse Special," so as
to reach destination by a certain time. There was no dis-
pute as to the express agreement as stated, but the carrier in-
sisted that it was in violation of the Interstate Commerce
Law in providing for a preference or advantage to the par-
ticular shipper and other shippers who had no such contract.
This contention was sustained by the Court, which declared:

"The implied agreement of a common carrier is to carry
safely and deliver at destination within a reasonable time.
It is otherwise when the action is for a breach of a contract
to carry within a particular time, or to make a particular
connection, or to carry by a particular train. The railroad
company, by its contract, became liable for the consequence
of a failure to transport according to its terms. Evidence
of diligence would not excuse. If the action had been for
the common-law carrier liability, evidence that there had
been no unreasonable delay would be an answer. But the
company, by entering into an agreement for expediting the
shipment, came under a liability different and more burden-
some than would exist to a shipper who made no such special
contract. * * * The shipper, it is also plain, was con-
tracting for an advantage which was not extended to all
others, both in the undertaking to carry so as to give him a
particular expedited service, and a remedy for delay not due
to negligence. * * * It is also illegal because it is an
undue advantage in that it is not one open to all others in
the same situation."

"The fact that carriers are instruments of intrastate com-
merce, as well as interstate commerce, does not derogate
from the complete and paramount authority of Congress
over the latter, or preclude the federal power from being ex-

erted to prevent the intrastate operations of such carriers from being made a means of injury to that which has been confided to federal care. Whenever the interstate and intrastate transactions of carriers are so related that the government of the one involves the control of the other, it is Congress, and not the State, that is entitled to prescribe the final and dominant rule, for otherwise Congress would be denied the exercise of its constitutional authority, and the State, and not the nation, would be supreme within the national field." *Houston, etc., R. Co. v. United States,* 234 U. S., 342; 34 S. Ct., 833; 58 L. Ed., 1341.

"While these decisions sustaining the federal power relate to measures adopted in the interest of the safety of persons and property, they illustrate the principle that Congress, in the exercise of its paramount power, may prevent the common instrumentalities of interstate and intrastate commercial intercourse from being used in their intrastate operations to the injury of interstate commerce." Id.

"Nor can the attempted exercise of state authority alter the matter, where Congress has acted, for a state may not authorize the carrier to do that which Congress is entitled to forbid and has forbidden." Id.

"The authority of Congress extends to every part of interstate commerce, and to every instrumentality or agency by which it is carried on; and the full control by Congress of the subjects committed to its regulation is not to be denied or thwarted by the commingling of interstate and intrastate operations. This is not to say that the nation may deal with the internal concerns of the State, as such, but that the execution by Congress of its constitutional power to regulate interstate commerce is not limited by the fact that intrastate transactions may have become so interwoven therewith that the effective government of the former incidentally controls the latter. This conclusion necessarily results from the supremacy of the National power within its

appointed sphere." *Minnesota Rate cases,* 230 U. S., 352; 33 S. Ct., 729; 57 L. Ed., 1511; 48 L. R. A. (N. S.), 1151, Ann. Cas., 1916-A, 18.

Considered as a case either of interstate commerce or as intrastate commerce, it is clear that the contract in question offends in the one case the federal laws, and in the other the statute law of South Carolina.

The complaint should show whether the intended shipments were interstate or intrastate commerce, or partly of each character; it also should show whether the defendant was engaged in interstate as well as intrastate commerce.

The judgment of this Court should be that the appeal be dismissed, and the case remanded to the Circuit Court, with leave to the defendant to move for an order requiring separate statements of the alleged causes of action, and that they be made definite and certain, and to demur or answer as it may be advised.

MR. CHIEF JUSTICE WATTS concurs.